■ HAROLD R. BLAIR, Appellant-Respondent, v. FRANK SCIMONE, Respondent-Appellant.— *Per Curiam*. Appeal by plaintiff from a judgment of the Supreme Court, entered upon a decision after trial without a jury, which awarded to plaintiff damages of $14,356, upon the basis of *quantum meruit*, in an action brought *inter alia* for dissolution of a partnership and for a partnership accounting. Plaintiff in 1961 obtained an option to purchase a tract of land suitable for a housing development; but after several extensions pending his efforts to finance the purchase, the option expired and his payment of $9,000 was forfeited. Plaintiff continued to have access to the owner, however, and continued his efforts to obtain financing, and ultimately interested defendant in the proposal; and after some negotiation the owner gave plaintiff and defendant an option expiring November 1, 1963 to purchase for $310,000, the parties paying for the option $13,100, to be applied to the purchase price, defendant advancing $5,000 thereof and $8,100 representing a credit given by the owner on account of plaintiff's prior payment of $9,000 (less $900 broker's commissions) which had thereafter been forfeited. When the option was about to expire, the plaintiff and the defendant on November 1, 1963 entered into the agreement in suit. This instrument recites that the parties are " jointly interested and connected with a venture to purchase and develop " the optioned lands; that each had advanced moneys toward the purchase; that it is " contemplated " that defendant will " continue to advance the balance of money necessary to consummate the purchase " (it being important to note that as originally drafted the agreement contained, after the phrase " consummate the purchase ", the words " and to develop the said lands ", which at defendant's request were deleted before the agreement was signed) ; that to protect defendant's " larger portion of moneys advanced " plaintiff has assigned his interest in the option to defendant; and that " the venture is to be ultimately owned and controlled on an equal basis ". The agreement then provides, so far as here pertinent, that defendant will take title to the optioned lands in his name or in that of a corporation to be formed, which will assume the purchase money mortgage to be given and, also, the obligation of repaying to each party his past and future advances, after which each party shall own 50% of the corporation and that until that time defendant shall own 90% and plaintiff 10% thereof. Title was conveyed to defendant upon his payment of $60,000 and his execution of a purchase money mortgage. Defendant testified that in January, 1964, plaintiff was unable to pay the taxes which came due in that month or to pay a share of the engineering expense (the amounts of the taxes and other expense not being indicated) and that in February, 1964 he told plaintiff that plaintiff " was no longer a part of this transaction ". In March, 1965 defendant sold the property for approximately $650,000, indicating a profit of approximately $300,000. The trial court found " that the proof was too inconclusive and indefinite to establish the existence of a partnership between these parties or any contract complete and definite in all its essential terms "; found the agreement " void and unenforceable as too indefinite in character "; and held that " the title to the premises vested in the defendant "; but, under an alternative cause of action added to the complaint by amendment made, pursuant to the court's

suggestion, so as to plead *quantum meruit,* the court awarded plaintiff damages of $14,356, representing moneys advanced and the value of services rendered. The only deficiency in the agreement to which the trial court pointed was its failure to " spell out specifically the nature of the contribution each [party] was to make to the venture." The agreement " contemplated ", however, that defendant would " continue to advance the balance of money necessary to consummate the purchase " and this obligation defendant recognized and performed. The agreement provided that the parties would be reimbursed their initial advances and " any other advances ", this, necessarily, out of earnings or sales. Thus, the agreement was generally clear and complete and defendant's proof that, two months after the conveyance of the realty to defendant, the plaintiff could not or did not pay any part of the taxes which then became due in an unspecified sum, or an unstated amount of engineering expenses, seems clearly insufficient to warrant rescission of a contract which qualifies as a partnership agreement or an agreement for a joint venture, at so severe a penalty, and within but two or three months of its inception; particularly so when defendant was secured by holding legal title to the partnership assets and a 90% beneficial interest therein, while the remedy of dissolution and accounting remained available to him as to the plaintiff. It does not seem particularly important, within the frame of this litigation, whether the parties' agreement and conduct recognized and gave rise to a partnership or to a joint venture. " A partnership may be created by an agreement relating to a single transaction in the sale or purchase of land, and it has been held that a partnership for dealing in land was created where the lands were bought jointly for speculation, each party to share equally in the profits." (43 N. Y. Jur., Partnership, § 16, citing *Schneider* v. *Brenner,* 134 Misc. 449.) The arrangement in the case before us seems to fit within this not too exacting definition, but if it should not be deemed to qualify thereunder, it would seem clearly within the intendment of a joint venture, " as a ' special combination of two or more persons where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.' (Schouler Pers. Prop. [5th ed.] § 167a) " (*Forman* v. *Lumm,* 214 App. Div. 579, 583), the agreement in the case cited constituting " a joint venture to share the profits of a real estate speculation " (p. 583). " Even if the relations between the parties were not those of a technical copartnership, but a joint adventure, the agreement is still to be enforced and the rights and liabilities of the parties determined upon the same principles as are applied by courts of equity in partnership ", as was held in a case involving and effectuating an agreement far less specific than that before us. (*O'Hara* v. *Harman,* 14 App. Div. 167, 172.) The present record does not support the court's determination. Neither were the essential elements of the defenses, including that of fraud, established by the proof before the trial court. Judgment reversed, on the law and the facts, and a new trial ordered, with costs to appellant to abide the event. Gibson, P. J., Reynolds, Taylor, Aulisi and Staley, Jr., JJ., concur.